People v Navarro (2025 NY Slip Op 51303(U))

[*1]

People v Navarro

2025 NY Slip Op 51303(U)

Decided on August 18, 2025

Supreme Court, Kings County

Warin, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 18, 2025
Supreme Court, Kings County

The People of the State of New York

against
Israel Navarro, Defendant.

Ind. No. 623-20

E. Niki Warin, J.

The defendant moves pursuant to CPL 440.20 to set aside his sentence of thirteen years to life on his plea of guilty to Assault in the Second Degree as a persistent violent felony offender, arguing that the New York State recidivist sentencing provision is unconstitutional in light of the recent United States Supreme Court case of Erlinger v. United States, 602 US 821 (2024). The People oppose.
For the reasons set forth below, the defendant's motion is DENIED without a hearing.
 STATEMENT OF FACTS
The defendant was indicted on February 6, 2020 and charged with Attempted Murder in the Second Degree and other related charges. The indictment was based on allegations that on January 31, 2020, the defendant attacked his former intimate partner in his apartment, stabbing her approximately forty times in the abdomen, chest, face, neck, and back with a kitchen knife. The complainant fled the apartment and a third party called 911. The defendant was arrested at the scene and later admitted to stabbing her after they had an argument. The complainant underwent emergency surgery as a result of the attack.
After extensive plea negotiations and pre-trial proceedings over the next two years, the defendant pled guilty to the lesser charge of Assault in the Second Degree with a promised sentence of thirteen years to life. The People stated the reduced offer took into account the defendant's age—he was 65 years old at the time of the incident—and the wishes of his ex-girlfriend, the complainant (April 12, 2022 Tr., pg. 8).[FN1]
On April 12, 2022, the defendant then entered a guilty plea to Assault in the Second Degree, which was accepted by the Court.
At the defendant's plea to a violent felony, it was not disputed that the defendant must be sentenced as a persistent violent felony offender. The predicate statement filed by the People listed two prior violent felony convictions; one for Manslaughter in the First degree where he [*2]was sentenced in 1980 to a term of five to fifteen years; and a second one, this time for Murder in the Second Degree where he was sentenced in 1988 to a term of twenty five years to life. As required by statute, the predicate statement also listed the dates of his incarceration and release; the defendant was incarcerated for the first sentence on December 11, 1980 and released on August 25, 1986; he was then re-incarcerated for the second sentence on January 7, 1987 and released on August 13, 2019.
At the plea, the defendant was arraigned on the predicate statement. The court clerk stated to the defendant:
You may admit, deny or stand mute as to whether you are the person who was convicted and sentenced on those violent felonies as recited in the statement.
If you wish to controvert, that is contest, dispute or deny that statement on any grounds, including a violation of your constitutional rights, you must state the grounds and you'll be entitled to a hearing before this Court without a jury
(Id., pg. 23). The defendant acknowledged that he had received a copy of the statement and had discussed it with his attorney. The clerk then asked the defendant "Do you admit that you are the person who was convicted of those felonies?" The defendant stated "yes." The clerk asked the defendant "Do you wish to challenge the constitutionality of the prior convictions?" The defendant responded "no." (Id., pg. 24). The Court then adjudicated the defendant a persistent violent felony offender (Id.).
The defendant appealed his conviction and sentence (see People v. Navarro, 233 AD3d 803 [2d Dept 2024]). On appeal, the Second Department found based on a totality of the circumstances the defendant did not knowingly voluntarily, and intelligently waive his right to appeal, without specifying the basis, citing to People v. Thomas, (34 NY3d 545 [2019]) and People v. Lopez, (6 NY3d 248 [2006]) (Id.). The Second Department held the sentence imposed was not excessive and his plea of guilty was knowingly, voluntarily, and intelligently entered (Id.) The defendant's application for leave to appeal to the Court of Appeals was denied (People v. Navarro, 43 NY3d 1047 [2025]).

DISCUSSION
Before addressing the question of whether Erlinger calls into question the constitutionality of the defendant's sentence, the Court must first address whether the defendant waived his right to raise this challenge by failing to contest his predicate status and/or the relevant tolling periods when he was arraigned on the predicate statement. (see People's Opp. at 21-23).
A. Defendant's Arraignment as a Predicate Felony Offender Did Not Constitute a Waiver
A "persistent violent felony offender" stands convicted of a violent felony offense and has two or more prior violent felony convictions, where the sentences for those earlier violent convictions were imposed not more than ten years prior to the commission of the violent felony offense (PL 70.08[1]). In determining the ten year period, "any period of time during which the person was incarcerated for any reason between the time of the commission of the previous felony and the time of the commission of the present felony shall be excluded and such ten year period shall be extended by a period or periods equal to the time served" (PL 70.04[1][b][v]).
The required procedure for adjudicating a defendant as a persistent violent felony offender is set forth in CPL 400.15 and 400.16, including the necessary contents of the predicate statement, and the colloquy during the arraignment (see CPL 400.16[2]; CPL 400.15[2]). The [*3]statute requires the defendant receive a copy of the predicate statement and that the defendant is asked on the record "whether he . . . wishes to controvert any allegation made therein . . . [and if so] he must specify the particular allegation or allegations he wishes to controvert" (CPL 400.15[3]). This provision also states that "[u]ncontroverted allegations in the statement shall be deemed admitted by the defendant" (Id.).
The People argue the defendant "effectively admitted" to the relevant periods of incarceration for tolling purposes when he was arraigned as a predicate felon (People's Opp at pg. 19). The defendant asserts his silence as to the relevant periods of incarceration did not constitute an admission of the tolling period, nor waiver of any subsequent Erlinger challenge, relying on People v. Jurgins, (26 NY3d 607 [2015]).[FN2]

In Jurgins, the defendant moved under CPL 440.20 to set aside his sentence on the grounds that his prior out of state conviction did not qualify him a second felony offender (Id. at 611). During the arraignment on his predicate statement, the defendant was asked two questions: if he wished to challenge the predicate statement on the grounds that he was not the person named therein; or that it was unconstitutionally obtained; and he responded in the negative to both and did not raise any other challenge. The People argued that the defendant had therefore waived a later challenge to his predicate status, but the Jurgins court disagreed, finding the "defendant's statements that he was not challenging the predicate felony information on the two grounds delineated by the court clerk did not constitute a waiver of other, unmentioned grounds" (Id.). The Court of Appeals further stated that although CPL 400.21(3) includes language that any unchallenged allegations are deemed admitted, "for that rule to apply, the court must ask the defendant if he or she 'wishes to controvert any allegation made' in the predicate felony statement" (Id., Fn. 1 [emphasis added]; see also People v. Wilcher, 162 AD3d 466 [1st Dept 2018]["[t]he court did not adequately adhere to the statutory requirement that it ask the defendant if he wished to 'controvert any allegation made' in the predicate felony statement, which also requires that it provide defendant a clear opportunity to do so in response to that particular question"].[FN3]

In this case, the defendant was advised at the beginning of the colloquy that he must state the grounds for a challenge to the statement "on any grounds." However, he was only asked the same two questions that the Court of Appeals found insufficient to cover all such grounds in [*4]Jurgins; namely, if he admitted he was the person convicted of the prior felonies and if he wished to challenge the constitutionality of the prior convictions. Significantly, he was not asked if he wished to controvert any allegation within the predicate statement—a question that may encompass a challenge to the relevant periods of incarceration and any tolling of the ten-year period (see e.g. People v. Smith, 86 Misc 3d 1211[A] [Sup Ct Bronx County 2025][finding defendant relinquished subsequent challenge under Erlinger where his prior convictions and periods of incarceration were placed on the record and he was directly asked if he wished to challenge the statement "in any way"]; People v. Sabater, 86 Misc 3d 181, 186, and ftn. 4 [Sup Ct NY County 2024][defendant deemed to have admitted dates of incarceration relevant to tolling where asked whether he wanted to dispute "any" of the allegations in the predicate statement and said no]; cf. People v. Hernandez, — Misc 3d —, 2025 NY Slip Op 25135 [Sup Ct NY County 2025]).
On this record, the Court finds that the defendant did not "effectively admit" to the accuracy of the relevant tolling periods, nor can his failure to challenge the tolling provisions when he was not directly asked to raise any other challenge constitute a waiver under Jurgins. Accordingly, the Court will address the defendant's claims on the merits.
B. The Erlinger Decision
In Erlinger, the Supreme Court addressed the issue of judicial fact-finding at sentencing authorized under the Armed Career Criminal Act (hereinafter "ACCA") (18 USC Sec 924[e]). The ACCA requires a mandatory minimum sentence and greatly increases the maximum sentence available if the sentencing court finds the defendant has sustained three prior convictions for a violent felony and/or serious drug offense that are "committed on occasions different from one another" (Id.). At the sentencing hearing in Erlinger, the prosecution sought an increased sentence based on burglaries committed twenty-six years earlier when the defendant was eighteen years old (Erlinger, 602 US at 827). The court determined that the defendant's burglarizing of a pizzeria, a sporting goods store, and two other restaurants "occurred on different occasions" rather than occurring "during a single episode" and as a result, the defendant was sentenced under the ACCA to a mandatory minimum term of fifteen years (Id.).
The Supreme Court characterized the sentencing court's "different occasions" inquiry as a "fact laden task," that would include an analysis of whether the crimes were committed close in time, if their locations were in proximity, and whether "the offenses [were] similar or intertwined in purpose or in character" (Erlinger, 602 US at 834 quoting Wooden v. United States, 595 US 360, 369 [2022]). Such an analysis may require a "qualitative assessment about the character and relationship of the offenses" and "whether the crimes shared a common scheme or purpose" (Id. at 841 [internal citations omitted]). The Supreme Court held that under the rule announced in Apprendi v. New Jersey (530 US 466 [2000]), such an inquiry must be found beyond a reasonable doubt by a jury of one's peers (Erlinger, 602 US at 834, 835). In Apprendi, the Supreme Court found a New Jersey hate crime statute violated the defendant's right to a trial by jury because it permitted a longer term of imprisonment if the trial judge found by a preponderance of the evidence "that the defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity" (Id. at 469 [internal citations omitted] [emphasis added]]. The Erlinger court recognized its decision as an application of the Apprendi rule, charactering it as "as nearly on all fours with Apprendi . . . as any we might imagine" (Id. at 835). It also stated "[w]hile recognizing Mr. Erlinger was entitled to have a jury to resolve [*5]ACCA's occasions inquiry unanimously and beyond a reasonable doubt, we decide no more than that" (Id.).
The Erlinger decision expressly noted that the "different occasions" inquiry under ACCA did not fall within the exception defined in Almendarez-Torres v. United States (523 US 224 [1998]), a precedent which allows for a sentencing judge to find "the fact of a prior conviction" without violating a defendant's constitutional right to jury fact-finding, even when it will result in an increased sentence.[FN4]
Rather, the "different occasions" inquiry in Erlinger was distinct from Almendarez-Tores because the sentencing judge had "assume[d] for itself the responsibility of deciding whether [the defendant's] past offenses differed enough in time, location, character, and purpose to have transpired on different occasions" and therefore "did more than Almandarez-Torres allows" (Erlinger, at 838, 840). Similarly, the Apprendi court distinguished the inquiry required under the New Jersey hate crime statute from the permissible judicial determination in Almendarez-Torres stating that "[w]hereas recidivism does not relate to the commission of the offense itself, New Jersey's biased purpose inquiry goes precisely to what happened in the commission of the offense" (Id. at 469 [internal citations omitted] [emphasis added]).
C. Erlinger does not Render PL 70.08 Unconstitutional
There have been a spate of decisions by New York trial courts that have concluded a determination by the sentencing court on the applicable tolling for a predicate violent felony offender does not run afoul of the Erlinger decision (see People v. Rivera, 85 Misc 3d 1032 [Sup Ct NY County 2024]; People v. Jackson, 86 Misc 3d 411 [Sup Ct Queens County 2025]; People v. Lawton, 86 Misc 3d 1210[A] [Sup Ct Kings County 2025]; People v. Vickers, — Misc 3d — 2025 NY Slip Op 25157 [Sup Ct Bronx County 2025]).[FN5]
Like these courts, this Court is persuaded that the Erlinger decision applied the principles of Apprendi to strike down the judicial factfinding required for the ACCA "different occasions" inquiry - it did not announce a new rule (Rivera, 85 Misc 3d at 1036; Vickers, — Misc 3d — at 3). The Erlinger decision does not, therefore, undermine the existing authoritative precedent that the New York persistent violent felony offender statute passes muster under the Apprendi rule (see Jackson, at 906-908 (collecting cases); e.g. People v. Bell, 15 NY3d 935 [2010]; People v. Sweeper, 15 NY3d 925 [2010]; People v. Frazier, 16 NY3d 36 [2010])).
Further, this Court agrees that the nature of the inquiry for the tolling provision is substantially different than the ACCA's "different occasions" determination in Erlinger, and is instead more akin to the mundane "fact of a prior conviction" determination upheld in [*6]Almanderez-Torres (e.g. Jackson, 86 Misc 3d at 421 [the ten year tolling "involves no exercise of discretionary judgment by the court, and relate neither to the manner and circumstances of the commission of the crime, nor to the character and background of the defendant"]; Rivera, 85 Misc 3d at 1037-1038 [finding "no logical distinction — certainly not one that would trigger the constitutional right to a jury trial — between a judicial finding of the fact of a prior conviction which can be made by the judge without controversy — and the fact of a prior incarceration and the relevant dates which triggers the tolling provision . . . the remaining tolling provision calculus is just a bit of arithmetic, which is not a finding of fact at all"]; Vickers at 3 [the ten year tolling "only necessitates a mechanical 'quantitative' finding based on an objective numerical calculation"] [emphasis in original]).
The Court agrees that identifying the period of time the defendant spent incarcerated on his prior convictions from the predicate statement is readily distinguished from the substantive, qualitative, and discretionary inquiry by the sentencing court in Erlinger into the defendant's behavior in previous offenses and the manner in which the offenses were committed (602 US at 840). As set forth in Jackson, "[t]he date that a Defendant entered or was discharged from a correctional facility to serve a sentence, like the date that a conviction occurred, has nothing to do with the manner in which the underlying offense was committed" (86 Misc 3d at 420).
In this case, the Court made no determination as to defendant's underlying intent or the manner in which the predicate offenses were committed. The defendant's status as a predicate violent felony offender was determined by confirming the previous convictions were for violent felonies and calculating the time excluded from the ten-year tolling period due to the defendant's incarceration on the prior sentences for Manslaughter in the First Degree and Murder in the Second Degree, facts that were apparent from the predicate statement.[FN6]

Therefore, the Court finds that the defendant was not deprived of his right to a jury by the calculation of the tolling provision of PL 70.04(b) that resulted in an enhanced sentence under New York's recidivist violent felony sentencing scheme.

Conclusion
Accordingly, the Court DENIES without a hearing the defendant's motion to set aside his sentence as illegally imposed pursuant to Erlinger and CPL 440.20.
Dated: August 18, 2025
Brooklyn, New York
ENTER:
E. Niki Warin, A.S.C.J.

Footnotes

Footnote 1:The instant petition also contains details regarding the defendant's age and various age-related medical conditions (i.e. cataracts, poor hearing, osteoarthritis), and his minimal disciplinary infractions during his sentence so far. While these considerations are not legally relevant to the instant petition, the Court notes that his age was already weighed as mitigation prior to the acceptance of the plea and imposition of the sentence.

Footnote 2:The People do not address Jurgins, relying instead on their argument that the colloquoy here satisfied the Apprendi requirements as an admission by the defendant (see People's Opp. at 19-21; citing to CPL 400.16(2) and 400.15(2), and People v. Rivera, (Sup Ct, Kings County, April 25, 2025, King J., IND-1453-05))

Footnote 3:The Jurgins court considered the question of waiver on the appeal of the sentencing court's denial of a 440.20, noting that a 440.20 motion is "the proper vehicle" to challenge "an alleged error in sentencing a defendant as a second or third felony offender [and] the decision to consider certain prior convictions as predicates"(26 NY3d at 612). Conversely, a similar challenge on direct appeal may be waived or may fail for lack of preservation if not argued at sentencing (Id.; see e.g. People v. Hernandez, — NY3d —, 2025 Slip Op 99094[2025] (declining to address Erlinger claim on direct appeal when defendant did not contest his criminal history and/or relevant periods of incarceration at sentencing)).

Footnote 4:The Almendarez-Torres court held a jury was not required to determine the fact of a defendant's prior convictions to aggravated felonies beyond a reasonable doubt because of "the distinct nature of the issue and the fact that recidivism does not relate to the commission of the offense, but goes to the punishment only" (Id. at 244 quoting Oyler v. Boles, 368 US 488, 452 [1962] [emphasis in original]).

Footnote 5:The Court recognizes that this list is not complete, and further, that multiple trial courts have also come to the opposite conclusion (compare People v. Lopez, 85 Misc 3d 171 [Sup Ct NY County 2024]; People v. Perry, 85 Misc 3d 982 [Sup Ct Kings County 2024]; People v. Rodney, 85 Misc 3d 852 [Sup Ct NY County 2024]; People v. Taylor, 86 Misc 3d 263 [Sup Ct Nassau County 2024]).

Footnote 6:Indeed, any calculation of the tolling provision was particularly non-controversial in this case: the defendant was re-incarcerated for murder less than five months after his release from serving his manslaughter sentence; and the instant offense occurred less than six months after the defendant's release from his incarceration for his murder conviction.